POMERANTZ LLP
Brian Calandra
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
bcalandra@pomlaw.com

*Attorney for Plaintiff*

- additional counsel on signature page -

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH ZAPPIA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SLM CORPORATION a/k/a SALLIE MAE, JONATHAN W. WITTER, and PETER M. GRAHAM,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joseph Zappia ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's

attorneys, which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding SLM Corporation ("SLM" or the "Company") a/k/a Sallie Mae, analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that invested in SLM securities between July 25, 2025 and August 14, 2025, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      SLM, more commonly known as Sallie Mae, primarily originates and services private education loans ("PELs") to students and their families. SLM prides itself on its purported "high-quality" PELs, as well as its loss mitigation and loan modification programs to improve the collectability of PELs.

3.     SLM classifies its PELs as being in repayment when customers are making interest-only or fixed payments, or when they have entered full principal and interest repayment status after any applicable grace period.  SLM charges off delinquent PELs at the end of the month in which they reach 120 days delinquent, or otherwise when they are classified as a loss by SLM or its regulator.  SLM's cost to service a delinquent borrower is significantly higher than the cost to service a current or in-school borrower.  Accordingly, delinquency rates on SLM's PELs are a critical metric that investors rely on in determining the health and profitability of SLM's PEL business.

4.     At all relevant times, investors and analysts were reassured by Defendants' statements that rising delinquency rates for SLM's PELs were attributable to, *inter alia*, purportedly "normal seasonal trends" and minor refinements to SLM's loan offerings, as well as reassured by Defendants' statements touting the effectiveness of SLM's purportedly "enhanced" loss mitigation and new loan modification programs.  For example, during a conference call with investors and analysts on July 24, 2025, SLM's Executive Vice President ("EVP"), Chief Financial Officer ("CFO"), and Treasurer, Defendant Peter M. Graham ("Graham"), assured investors that "the trends that we're seeing in both delinquencies as well as sort of the Grace programs and the like, really are following the normal seasonal trends that we would expect in the business."

5.    Defendants made materially false and misleading statements regarding SLM's business, operations, and prospects that artificially inflated the prices of SLM's securities during the Class Period.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) SLM was experiencing a significant increase in early stage delinquencies; (ii) accordingly, Defendants overstated the effectiveness of SLM's loss mitigation and/or loan modification programs, as well as the overall stability of the Company's PEL delinquency rates; and (iii) as a result, Defendants' public statements made a materially false and misleading impression regarding SLM's business, operations, and prospects at all relevant times.

6.    On August 14, 2025, investment bank TD Cowen issued a report addressing SLM, flagging that, "[o]verall, July [2025] delinquencies were up 49 bp m/m, *higher (worse) than the seasonal (+10 bps) performance for July*, driven by a 45 bps increase in early stage delinquencies."[1]  Notably, TD Cowen's findings directly contradicted Defendant Graham's assurances—*made late in the month of July 2025*—that Defendants were observing delinquency rates that "really are following the normal seasonal trends we would expect in the business."

7.    Following TD Cowen's report, SLM's stock price fell $2.67 per share, or 8.09%, to close at $30.32 per share on August 15, 2025.

---

[1] All emphases herein are added unless otherwise indicated.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

11.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Plaintiff is a resident of this District, and a substantial part of the property that is the subject of this action is thus situated in this District.  Moreover, per SLM's most recent quarterly report on Form 10-Q, as of September 30, 2025, there were more than 203 million shares of the Company's common stock outstanding.  SLM's common stock trades in the U.S. on the NASDAQ Global Select Market ("NASDAQ").  Accordingly, in addition to Plaintiff, there are presumably hundreds, if not thousands, of investors in SLM's securities located in the U.S., some of whom, like Plaintiff, undoubtedly reside in this District.

12.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

13.    Plaintiff, as set forth in the attached Certification, invested in SLM securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.    Plaintiff resides in Middlesex County, New Jersey, which is located in this District.

14.    Defendant SLM is incorporated in Delaware with principal executive offices located at 300 Continental Drive, Newark, Delaware 19713.  The Company's common stock and Series B floating rate non-cumulative preferred stock trade in an efficient market on the NASDAQ under the ticker symbols "SLM" and "SLMBP," respectively. That SLM's stock trades on an efficient market suffices to establish that SLM's options also trade on an efficient market.

15.    Defendant Jonathan W. Witter ("Witter") has served as SLM's Chief Executive Officer at all relevant times.

16.    Defendant Graham has served as SLM's EVP, CFO, and Treasurer at all relevant times.

17.    Defendants Witter and Graham are collectively referred to herein as the "Individual Defendants."

18.    The Individual Defendants possessed the power and authority to control the contents of SLM's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of SLM's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with SLM, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

19.    SLM and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.    SLM, more commonly known as Sallie Mae, primarily originates and services PELs to students and their families.  SLM prides itself on its purported

"high-quality" PELs, as well as its loss mitigation and loan modification programs to improve the collectability of PELs.

21.    SLM classifies its PELs as being in repayment when customers are making interest-only or fixed payments, or when they have entered full principal and interest repayment status after any applicable grace period.  SLM charges off delinquent PELs at the end of the month in which they reach 120 days delinquent, or otherwise when they are classified as a loss by SLM or its regulator.  SLM's cost to service a delinquent borrower is significantly higher than the cost to service a current or in-school borrower.  Accordingly, delinquency rates on SLM's PELs are a critical metric that investors rely on in determining the health and profitability of SLM's PEL business.

22.    At all relevant times, investors and analysts were reassured by Defendants' statements that rising delinquency rates for SLM's PELs were attributable to, *inter alia*, purportedly "normal seasonal trends" and minor refinements to SLM's loan offerings, as well as reassured by Defendants' statements touting the effectiveness of SLM's purportedly "enhanced" loss mitigation and new loan modification programs.

**Materially False and Misleading Statements that Artificially Inflated SLM's
Securities During the Class Period**

23.    The Class Period begins on July 25, 2025.  On July 24, 2025, during post-market hours, SLM issued a press release announcing its financial results for

the second quarter ("Q2") of 2025.  Attached to the press release was a document entitled "SLM Q2 Earnings Supplemental[,]" wherein Defendant Witter was quoted as touting the purported "strength of our core business, resilience of our customers, and continued execution of our strategy."

24.    The same day, also during post-market hours, SLM hosted a conference call with investors and analysts to discuss its Q2 2025 financial results.  During the call, Defendant Graham downplayed a year-over-year ("Y/Y") increase in SLM's PELs delinquent 30 days or more, while touting the Company's loan modification programs, stating, in relevant part:

> [PEL]s delinquent 30 days or more were 3.5% of loans in repayment, a decrease from the 3.6% at the end of the first quarter of 2025, although higher than the 3.3% at the end of the year ago quarter. ***We remain pleased with the continued positive performance of our loan modification programs*** and see the benefit of these programs within our late-stage delinquencies, which have remained flat year-over-year despite an almost $2 billion increase in loans in repayment.

25.    During the same call, an analyst inquired into whether Defendants had "any color on the 30- to 59-day delinquency bucket that is kind of up meaningfully year-over-year[,]" to which Defendant Graham responded, in relevant part:

> I think in general, ***I would say the trends that we're seeing in both delinquencies as well as sort of the Grace programs and the like, really are following the normal seasonal trends that we would expect in the business. We continue to be pleased with the performance of the loan mod[ification] programs and success rates there.*** We have not seen any sort of abnormal trends of increased pressure on folks as they come out of the extended grace program. So variations that we're

seeing were starting to sort of settle into what we think is going to be kind of our new kind of normal in terms of seasonality.

26.    Also on July 24, 2025, during post-market hours, SLM filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for its Q2 ended June 30, 2025 (the "Q2 2025 10-Q").  The Q2 2025 10-Q further downplayed the Y/Y increase in delinquency rates in Q2, stating that "[t]he increase in the delinquency metric is primarily attributable to changes and refinements to our loss mitigation programs in 2023 and 2024."

27.    In addition, the Q2 2025 10-Q touted SLM's purportedly "enhanc[ed] . . . loss mitigation programs through both [its] forbearance and loan modification offerings."

28.    Appended as exhibits to the Q2 2025 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein the Individual Defendants certified that the Q2 2025 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report"; and that "the financial statements, and other financial information included in th[e Q2 2025 10-Q], fairly present in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in this report[.]"

29.    The statements referenced in ¶¶ 23-28 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about SLM's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) SLM was experiencing a significant increase in early stage delinquencies; (ii) accordingly, Defendants overstated the effectiveness of SLM's loss mitigation and/or loan modification programs, as well as the overall stability of SLM's PEL delinquency rates; and (iii) as a result, Defendants' public statements made a materially false and misleading impression regarding SLM's business, operations, and prospects at all relevant times.

30.    Defendants likewise violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required SLM to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants' failure to disclose, *inter alia*, that SLM was experiencing a significant increase in early stage delinquencies, as well as the true effectiveness of SLM's loss mitigation and/or loan modification programs and the overall stability of SLM's PEL delinquency rates, violated Item 303 because these issues represented known trends or uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

**The Truth Emerges**

31.    On August 14, 2025, during post-market hours, TD Cowen issued a report addressing SLM, flagging a meaningful increase in July delinquencies for SLM's PELs.  Specifically, the report found that, "[o]verall, July delinquencies were up 49 bp m/m, *higher (worse) than the seasonal (+10 bps) performance for July [2025]*, driven by a 45 bps increase in early stage delinquencies."  Notably, the TD Cowen report's findings directly contradicted Defendant Graham's representations in ¶ 25, *supra*, that delinquencies were purportedly "following the normal seasonal trends"—an observation that Defendant Graham made *near the end of July*.

32.    Following TD Cowen's report, SLM's stock price fell $2.67 per share, or 8.09%, to close at $30.32 per share on August 15, 2025.

33.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of SLM's securities, Plaintiff and other Class members have suffered significant losses and damages.

**Post-Class Period Developments**

34.    On October 23, 2025, SLM issued a press release announcing its financial results for the third quarter ("Q3") of 2025, including Q3 GAAP[2] earnings per share ("EPS") of $0.63, missing consensus estimates by $0.17.  The same day, SLM held a conference call with investors and analysts to discuss these results,

---

[2] "GAAP" refers to generally accepted accounting principles.

during which Defendant Graham disclosed, *inter alia*, that "[a]t the end of [Q3], 4% of [PEL]s and repayment were 30 days or more delinquent, up from 3.6% at the end of the year ago quarter[,]" which he blamed as being "largely attributable to changes we made last year to our loan modification eligibility criteria."

35.    Following the foregoing earnings release and conference call, multiple analysts expressed concern with SLM's PEL delinquency rate.  For example, Keefe, Bruyette & Woods stated that "[t]he rising delinquencies are a concern," and that SLM "shares will remain in a holding pattern until we get more of a verdict on credit quality[.]"  Likewise, Jefferies noted that delinquencies "went up more - suggesting the credit debate will persist[,]" and that "rising [delinquencies] will be in focus, and may be tied to the changes to modification policies earlier in the year[.]"  Significantly, TD Cowen clearly anticipated the delinquency rate increase and attendant concerns described above months earlier in its August 2025 report.

36.    Then, on December 8, 2025, during post-market hours, SLM held its Sallie Mae Investor Forum 2025 presentation.   As part of the presentation, Defendants provided below-consensus full year ("FY") EPS estimates for the next several years.  Specifically, SLM indicated that it expected, *inter alia*, FY 2026 EPS of only $2.63 versus the average analyst estimate of $3.41, FY 2027 EPS of only $2.87 versus a consensus estimate of $4.09, and FY 2028 EPS of only $3.41 versus a consensus estimate of $4.86.  Notably, SLM had previously announced with its Q3

2025 results that it was targeting FY 2025 EPS of $3.20 to $3.30, meaning Defendants expected post-FY 2025 earnings to fall and not recover until 2028.

37.    On this news, SLM's stock price fell $4.61 per share, or 14.94%, to close at $26.24 per share on December 9, 2025.  The presentation also prompted a slew of negative analyst reactions, with Morgan Stanley cutting its recommendation on SLM to equal-weight from overweight, Compass Point Research & Trading LLC cutting its recommendation to sell from buy, and TD Cowen cutting its price target on SLM stock to $35.00 from $40.00, noting that "overall, [the] meeting was underwhelming as management signaled slower EPS growth by prioritizing balance sheet growth over loan sale gains[.]"

## SCIENTER ALLEGATIONS

38.    Defendants had both the motive and opportunity to commit fraud on investors in SLM's securities during the Class Period.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  Indeed, SLM's PEL business is central to SLM's overall operations and financial results, and Defendants were undoubtedly highly focused on SLM's PEL delinquency rates.   This was clearly shown by Defendants' attention to and consistent statements regarding SLM's PEL delinquency rates, as well as their repeated positive statements concerning their loan modification and risk management policies to manage the

same, as detailed in ¶¶ 23-28, *supra*.  Moreover, Defendant Graham, **as late as July 24, 2025**, represented that "delinquencies . . . really are following the normal seasonal trends that we would expect in the business"—a representation that was directly contradicted by emerging data trends regarding these delinquency rates **that same month**.  Significantly, TD Cowen extrapolated from these emerging data trends that "July delinquencies were . . . **higher (worse) than the seasonal (+10 bps) performance for July**, driven by a 45 bps increase in early stage delinquencies." Clearly, the Individual Defendants would have had access to this same information, making Defendant Graham's July 2025 statement that "delinquencies . . . really are following the normal seasonal trends" all the more egregious.

39.    Accordingly, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on investors in the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

40.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who invested in SLM securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs,

successors or assigns and any entity in which Defendants have or had a controlling interest.

41.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, SLM securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by SLM or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants misrepresented material facts about the business, operations and management of SLM to the investing public during the Class Period;

- whether the Individual Defendants caused SLM to issue false and misleading financial statements;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of SLM securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

46.    Plaintiff will rely, in part, upon the presumption of reliance established

by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts that made a materially false or misleading impression regarding SLM's business, operations, and prospects during the Class Period;

- the omissions and misrepresentations were material;

- SLM securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold SLM securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

47.    Based upon the foregoing, Plaintiff and the members of the Class are

entitled to a presumption of reliance upon the integrity of the market.

48.    Alternatively, Plaintiff and the members of the Class are entitled to the

presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens*

*of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as

Defendants omitted information material to investors in SLM securities during the

Class Period in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

49. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

50. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

51. Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class who invested in SLM's securities during the Class Period; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of SLM securities; and (iii) cause Plaintiff and other members of the Class to invest in SLM securities and options at artificially inflated prices.  In furtherance of this

unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

52.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for SLM securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about SLM's finances and business prospects.

53.    By virtue of their positions at SLM, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

54.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of SLM, the Individual Defendants had knowledge of the details of SLM's internal affairs.

55.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of SLM.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to SLM's businesses, operations, future financial condition and future prospects.   As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of SLM securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning SLM's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class invested in SLM securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

56.     During the Class Period, SLM securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the

materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, invested in SLM securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have invested in said securities, or would not have invested in them at the inflated prices that were paid. At the time of the investments by Plaintiff and the Class, the true value of SLM securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of SLM securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

57. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

58. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

59.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

60.    At all relevant times, the Individual Defendants participated in the operation and management of SLM, and conducted and participated, directly and indirectly, in the conduct of SLM's business affairs. Because of their senior positions, they knew the adverse non-public information about SLM's misstatement of income and expenses and false financial statements.

61.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to SLM's financial condition and results of operations, and to correct promptly any public statements issued by SLM which had become materially false or misleading.

62.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which SLM disseminated in the marketplace, as detailed in ¶¶ 23-28, *supra*, concerning SLM's results of operations. At all relevant times, the Individual Defendants exercised their power and authority to cause SLM to engage in the wrongful acts complained of herein. The Individual

Defendants, therefore, were "controlling persons" of SLM within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of SLM securities.

63. Each of the Individual Defendants, therefore, acted as a controlling person of SLM. By reason of their senior management positions and/or being directors of SLM, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, SLM to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of SLM and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

64. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by SLM.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and

post-judgment interest, as well as their reasonable attorneys' fees, expert fees and

other costs; and

D.      Awarding such other and further relief as this Court may deem just and

proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  December 19, 2025                Respectfully submitted,

POMERANTZ LLP

*/s/ Brian Calandra*
Brian Calandra
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
bcalandra@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

WOHL & FRUCHTER LLP
Joshua E. Fruchter
(*pro hac vice* application forthcoming)
25 Robert Pitt Drive, Suite 209G
Monsey, New York 10952
Telephone: (845) 290-6818
Facsimile: (718) 504-3773
jfruchter@wohlfruchter.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, Joseph Zappia, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against SLM Corporation ("SLM") and authorize the filing of a comparable complaint on my behalf.

3.      I did not invest in SLM securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who invested in SLM securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in SLM securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws except that: (i) I was appointed to serve as lead plaintiff in a case under the Exchange Act in *Zappia v. Myovant Sciences Ltd. et al*., 1:23-cv-08097-JSR (S.D.N.Y.); and (ii) filed complaints under the Exchange Act on behalf of purported classes in *Zappia v. Fiesta Restaurant Group, Inc. et al*., 1:23-cv-08524-JLR (S.D.N.Y.); *Zappia v. GAN Limited et al*., 1:24-cv-00032-JPC (S.D.N.Y.); *Zappia v. Morphic Holding, Inc. et al*., 3:24-cv-04486-JD (N.D. Cal.); and *Zappia v. AvidXchange Holdings, Inc. et al*., 1:25-cv-5727-ER (S.D.N.Y).

7.      I agree not to accept any payment for serving as a representative party on behalf of

the Class as set forth in the Complaint, beyond my *pro rata* share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed** _12/10/2025_____

             **(Date)**

DocuSigned by:

*J A Zappia*

CAAA350B64614D9...

**Joseph Zappia**

**SLM Corporation (SLM)**

**Joseph Zappia**

**List of Purchases/Acquisitions and Sales**

| Transaction Type | Security Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|---|
| Purchase/Acquisition | P 20250815 30 | 8/15/2025 | 132 | $0.7500 |
| Sale | P 20250815 30 | 8/14/2025 | (7) | $0.0500 |
| Sale | P 20250815 30 | 8/14/2025 | (125) | $0.0500 |